Peter G. Bertling [S.B. #131602]
Bertling Law Group, Inc.
15 West Carrillo Street, Suite 100
Santa Barbara, CA 93101
Telephone: 805-879-7558
Facsimile: 805-962-0722
peter@bertlinglawgroup.com

Attorneys for Plaintiff
OSCAR SANDOVAL

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSCAR SANDOVAL,<br><br>                              Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                              Defendant. | Case No. 2-17-cv-03092-DMG-SK<br><br>**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Action Filed: April 25, 2017<br>Judge: Hon. Dolly M. Gee<br>Ctrm: 8C – 8th Floor<br>**FSC: December 3, 2019**<br>**Trial: January 14, 2020** |

## I.    INTRODUCTION

Plaintiff Oscar Sandoval was in good health when he was involuntarily transferred to the Safford Federal Correctional Institution, hereinafter referred to as "Safford," during the summer of 2014. He had no chronic health conditions, infectious diseases or pre-existing conditions that required constant medical supervision or monitoring. In fact, Safford is a "Care Level 1" facility which means it only houses healthy inmates under the age of 70 who have limited medical needs.

Prior to Mr. Sandoval's involuntary transfer to Safford, the Bureau of Prisons, hereinafter referred to as "BOP," knew the prison was located in an area where the fungus, *coccidioides posadasii*, was endemic. The BOP knew inhalation of the spores produced from this fungus could cause an incurable, deadly infectious disease known as coccidioidomycosis, also referred to as cocci, Valley Fever, or Desert Rheumatism, but is hereinafter referred to as "cocci."

The BOP knew there were several reasonable and cost effective preventative measures they could have implemented to substantially reduce Mr. Sandoval's probability of developing a cocci infection.  Unfortunately, instead of implementing these preventative measures, the BOP required that Mr. Sandoval engage in activities which increased his probability of developing a cocci infection. These activities included, but were not limited to:

(1)   Mr. Sandoval was required to work in a hazardous environment where he was at increased risk for inhaling the spores which cause a cocci infection.  He was not provided adequate personal protection, such as a low-cost breathing mask, even though the masks were available for his use.

(2)   Mr. Sandoval was required to use an unsafe cleaning protocol while cleaning up dirt and dust which exposed him to an increased risk of inhaling the spores which cause a cocci infection.

(3)   Mr. Sandoval was required to sleep in a negligently maintained housing unit where he was at increased risk for inhaling the spores which cause a cocci infection. According to Warden Susan McClintock, all doors and windows in Mr. Sandoval's housing unit were required to be sealed for safety reasons. Unfortunately, they were not.

(4)   Mr. Sandoval was required to spend a substantial amount of time outdoors during windy conditions where he was at increased risk for inhaling the spores which cause a cocci infection.  He was never given a protective mask while being

exposed to these conditions.  He was never even warned to avoid windy conditions and remain inside when they occurred.

On October 1, 2013, more than nine (9) months before Mr. Sandoval was involuntarily incarcerated at Safford, Dr. Newton Kendig, the Associate Director of Health Services for the BOP sent a memorandum to all BOP Wardens entitled: "Staff and inmate awareness of the infectious disease known as 'Valley Fever,'" hereinafter referred to as "the memo." Dr. Kendig notified Susan McClintock, the Warden at Safford, that Valley Fever was a "fungus" which "lives in the soil and can be spread to humans when the soil is disturbed by wind, construction, farming, and other activities."

In the memo, Dr. Kendig explained the "fungus cannot be detected visually" and "staff awareness and appropriate precautions are the key to detection, prevention, and treatment of Valley Fever." He notified Ms. McClintock that Valley Fever could become a "serious and chronic" medical condition. Consequently, he specifically mandated that all staff at Safford "must be made aware of the symptoms of Valley Fever and be reminded of the appropriate steps for medical referrals." He mandated that "[a]ll inmates must also be made aware of, and periodically reminded of, the signs and symptoms of Valley Fever as well as accessing health services for evaluation and treatment."

It is undisputed Mr. Sandoval was infected with cocci during his incarceration at Safford.  Before he was diagnosed, he was never educated or warned about the disease as mandated by Dr. Kendig.  He was never informed what the disease was, how it spread, what the symptoms included or what to do if he developed the symptoms. He was never informed what preventative measures he could take to substantially reduce his risk of developing this infectious, potentially life-threatening disease.

Mr. Sandoval has been diagnosed with disseminated cocci – the more progressive and severe form of the disease.  It causes chest pain, joint pain, skin lesions, lethargy, and constant emotional distress.  There is no cure for Mr. Sandoval's cocci.  It is a chronic and serious medical condition he will live with for the rest of his life.

Mr. Sandoval's diagnosis of disseminated cocci was made by Dr. Lynn Fitzgibbons, his current infectious disease specialist.  Even though Mr. Sandoval was initially diagnosed with cocci on March 3, 2015, he was not referred to an infectious disease specialist until September 13, 2017. Dr. Fitzgibbons is a non-retained expert who believes Mr. Sandoval will be on medication for his cocci "indefinitely" and will require close monitoring, routine lab tests, and regularly scheduled visits with a primary care physician and infectious disease specialist.  She believes he has experienced unnecessary pain, suffering, and emotional distress because of the BOP's failure to timely comply with her orders regarding necessary treatment and care for Mr. Sandoval's disease.  She has repeatedly advocated that Mr. Sandoval be transferred to a higher level of care, but her recommendations have been denied.

## II.     STATEMENT OF CLAIMS

### A.     Claim 1: Negligence

1.     *Elements of Negligence*

a.     Defendant owed a duty to protect Mr. Sandoval from unreasonable harm;

b.     Defendant breached its duty to protect Mr. Sandoval from unreasonable harm;

c.     Defendant's breach of its duty to protect Mr. Sandoval from unreasonable harm proximately caused his injuries; and

d.     Mr. Sandoval has suffered compensable damages.

2.     *Duties Applicable to Mr. Sandoval's Negligence Claim*

a.     18 USC 4042 imposes a duty on the Board of Prisons to "provide suitable quarters and provide for the safe keeping, care and subsistence of all persons . . . convicted of offenses against the United States." *United States v. Munitz*, 374 U.S. 150, 164-165 (1963). This includes a duty to provide Mr. Sandoval with appropriate medical care while incarcerated. *Jones v. United States*, 91 F.3d 623, 625 (3rd Circuit 1996).

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

      b.    Defendant has a "duty to undertake reasonable measures to reduce the known risk of Valley Fever that arose from incarceration in an area where the disease was endemic." *Aluya v. Management & Training Corp.*, 671 Fed. Appx, 970 (9th Cir. 2016); *Edison v. United States*, 822 F.3d 510, 521-522 (9th Cir. 2016).

      c.    Defendant has a duty to warn incarcerated inmates about the "hidden danger" of cocci. *Edison*, supra.

      d.    Defendant has a duty to provide Mr. Sandoval with medical treatment that complied with the standard of care.

> Medical negligence is the failure to comply with the applicable standard of care. To comply with the applicable standard of care, a [health care provider] must exercise that degree of care, skill, and learning that would be expected under similar circumstances of a reasonably prudent [health care provider] with this state. (Revised Arizona Jury Instruction (Civil) 5[th]: Medical Negligence 1: Definition of Medical Negligence; Causation; Fault; Plaintiff's Burden of Proof).

Defendant breached its duty of care to Mr. Sandoval because it never complied with Dr. Kendig's mandate that all inmates must "be made aware of, and periodically reminded of, the signs and symptoms of Valley Fever as well as accessing health services for evaluation and treatment."

Defendant breached its duty of care to Mr. Sandoval because they never warned him regarding the dangers of inhaling cocci spores or informing him he could develop a serious, incurable life threatening infectious disease by doing so.

Defendant breached its duty of care to Mr. Sandoval by requiring that he work in an environment where he could inhale dust and dirt containing cocci spores.

Defendant breached its duty of care to Mr. Sandoval by requiring that he adhere to a cleaning protocol where he could inhale dust and dirt containing cocci spores.

///

///

**2:17-cv-03092-DMG-SK**

- 5 -

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

Defendant breached its duty of care to Mr. Sandoval by failing to provide him with a protective respiratory mask while he was working in an environment where he could inhale dust and dirt containing cocci spores.

Defendant breached its duty of care to Mr. Sandoval by requiring that he sleep in a negligently maintained housing unit where he could unnecessarily inhale dust and dirt containing cocci spores.

Defendant breached its duty of care to Mr. Sandoval by requiring that he spend significant amounts of time outdoors during windy conditions where he could inhale dust and dirt containing cocci spores.

Defendant breached its duty of care to Mr. Sandoval because it never instructed him on ways to minimize exposure to and inhalation of cocci spores.

Defendant breached its duty of care to Mr. Sandoval because it never instructed him to remain indoors during windy conditions in order to avoid inhalation of cocci spores.

Defendant breached its duty of care to Mr. Sandoval because they misdiagnosed and mistreated his cocci.

Defendant breached its duty of care to Mr. Sandoval because it repeatedly failed to comply with physician orders regarding his treatment and care in a timely fashion.

   3.   *Evidence in Support of Mr. Sandoval's Negligence Claim*

      a.   Expert testimony and publications which establish that Safford is in an endemic area for cocci.

      b.   Testimony from multiple witnesses which establish Defendant knew Safford was in an endemic area for cocci.

      c.   Expert testimony and publications regarding the wind conditions at Safford during Mr. Sandoval's incarceration.

      d.   Photograph depicting aerial views of Safford and its location in Graham County, Arizona.

**2:17-cv-03092-DMG-SK**

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

e. Testimony regarding the BOP's failure to comply with Arizona 's Public Health laws regarding the reporting of cocci infections.

f. October 1, 2013, memorandum from Dr. Newton Kendig to all BOP Wardens including attachments.

g. Interrogatories propounded by Defendant to Mr. Sandoval on September 27, 2018, requesting that he:

> Identify all Medical Treatment You have received during Your Current Incarceration that You content failed to comply with the applicable standard of care, and, for each Medical Treatment You identify, state (a) the date on which You received the Medical Treatment; (b) what injury, illness, condition, or disability the Medical Treatment was intended to address; (c) the Health Care Provider who administered the Medical Treatment; (d) why You contend the Medical Treatment failed to comply with the applicable standard of care; and (e) how You contend You have been harmed by the Medical Treatment.

h. Mr. Sandoval's October 25, 2015 Administrative Claim for Damages.

i. Mr. Sandoval's October 19, 2016 Administrative Claim for Damages.

j. Mr. Sandoval's BOP medical records.

k. Mr. Sandoval's medical records from Dr. Thomas Rotkis (Pulmonologist).

l. Mr. Sandoval's medical records from Dr. Lynn Fitzgibbons (Infectious Disease).

m. Mr. Sandoval's medical records from Dr. Martin Berry (Rheumatologist).

n. Testimony from Mr. Oscar Sandoval.

o. Testimony from Newton Emerson Kendig, M.D. regarding his October 1, 2013 memorandum and actions he expected to be implemented in response to his memo.

///

2:17-cv-03092-DMG-SK

- 7 -

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

p.    Testimony from Warden McClintock regarding (1) measures allegedly in place at Safford to protect inmates from unnecessary exposure to cocci spores and (2) lack of evidence to establish compliance with Dr. Kendig's October 1, 2013 memorandum.

q.    Testimony from Dr. Lynn Fitzgibbons: Mr. Sandoval's infectious disease specialist designed as a non-retained expert witness to testify regarding (1) Mr. Sandoval's current medical condition, (2) Mr. Sandoval future medical treatment and care; and (3) the BOP's failure to comply with her orders regarding Mr. Sandoval's treatment and care including, but not limited to, the failure to timely obtain radiology and laboratory studies she needed to stage and properly manage Mr. Sandoval's cocci; failure to provide her with a  copy of Mr. Sandoval's relevant BOP medical records so she could provide continuity of care and properly manage his cocci; failure to timely comply with her request for follow up appointments with Mr. Sandoval so she could properly monitor and treat his cocci; and failure to timely have Mr. Sandoval undergo a comprehensive evaluation by a rheumatologist so she could understand the significance of multiple abnormal lab results and properly manage his cocci.

r.    Testimony from Dr. Berry:  Mr. Sandoval's rheumatologist designated as a non-retained expert witness to testify regarding the BOP's failure to timely comply with his orders to obtain comprehensive lab studies so he could make an accurate diagnosis regarding Mr. Sandoval's condition.

s.    Testimony from Dr. Royce Johnson:  Mr. Sandoval's retained expert witness who will testify regarding negligence, causation, effective preventative measures against cocci and damages.

t.    Testimony from Dr. Antonino Catanzaro: Defendant's retained expert witness designated to testify regarding negligence, causation and damages.

u.    Testimony from Peter Jaramillo, Certified Industrial Hygienist:  Mr. Sandoval's retained expert witness who will testify regarding negligence, causation,

effective preventative measure against cocci and benefits of education and awareness programs regarding the disease.

      v.    Testimony from Richard Lunt, NP:  Mr. Sandoval's primary health care provider while he was incarcerated at Safford who has been designated as a non - retained expert and will testify regarding the BOP's failure to comply with multiple orders regarding Mr. Sandoval's treatment and care in a timely fashion, including, but not limited to (1) failure to provide consulting pulmonologist, Dr. Thomas Rotkis with Mr. Sandoval's BOP medical records so he could make an accurate diagnosis of his condition and avoid unnecessary and detrimental medical treatment; (2) failure to provide prescribed medications in a timely and consistent manner;  and (3) failure to timely transfer Mr. Sandoval from a Level 1 Medical Facility to a Level 2 Medical Facility in a timely fashion.

      w.    Testimony from Jennie McNulty:  Mr. Sandoval's retained economist who had been designated to testify regarding his economic damages

**B.    Claim 2: Negligence - Premises Liability**

*1.    Elements of Negligence: Premises Liability*

      a.    Defendant owed a duty to protect Mr. Sandoval from unreasonable harm;

      b.    Defendant breached its duty to protect Mr. Sandoval from unreasonable harm;

      c.    Defendant's breach of its duty to protect Mr. Sandoval from unreasonable harm proximately caused his injuries; and

      d.    Mr. Sandoval has suffered compensable damages.

*2.    Duties Applicable to Mr. Sandoval's Negligence Claim—Premises Liability*

      a.    Landowner's have a duty to use reasonable care to warn of and safeguard invitees against an unreasonably dangerous condition of which they had notice.  (Revised Arizona Jury Instruction (Civil), 6th: Premises Liability 1: Notice of

Unreasonable Dangerous Condition); *Crim v. International Harvester Company*, 646 F.2d 161 (5th Cir. 1981) interpreting Arizona substantive premises liability law. Arizona law does not provide a definition for an "unreasonably dangerous condition."

       b.    Cocci is "invisible and scentless; individuals are typically infected by breathing in dust, especially in windy conditions.  Cocci is a classic example of a hidden danger, and the United States had a duty to warn [incarcerated inmates] about it." *Edison v. Management and Training Corp.*, 822 F.3d 510, 520 (9th Cir. 2016.)

Defendant's requirement that Mr. Sandoval work in an environment where he could be exposed to concentrated amounts of dust and dirt containing cocci spores created and placed him in an unreasonably dangerous condition.

Defendant's requirement that Mr. Sandoval adhere to a cleaning protocol where he could be exposed to concentrated amounts of dust and dirt containing cocci spores created and placed him in an unreasonably dangerous condition.

Defendant's failure to provide Mr. Sandoval with a protective respiratory mask while he was working in an environment where he could be exposed to concentrated amounts of dust and dirt containing cocci spores which created and placed him in an unreasonably dangerous condition.

Defendant's requirement that Mr. Sandoval sleep in a negligently maintained housing unit that unnecessarily exposed him to dust and dirt containing cocci spores created and placed him in an unreasonably dangerous condition.

Defendant's requirement that Mr. Sandoval spend significant amounts of time outdoors during windy conditions where he could unnecessarily be exposed to dust and dirt containing cocci spores which created and placed him in an unreasonably dangerous condition.

///
///
///

      3.     *Evidence in Support of Mr. Sandoval's Negligence Claim —*
                *Premises Liability*

      a.     Expert testimony and publications which establish that Safford is in an endemic area for cocci.

      b.     Testimony from multiple witnesses which establish Defendant knew Safford was in an endemic area for cocci.

      c.     Expert testimony and publications regarding the wind conditions at Safford during Mr. Sandoval's incarceration.

      d.     Photographs depicting aerial views of Safford and its location in Graham County, Arizona.

      e.     Testimony regarding the BOP's failure to comply with Arizona 's Public Health laws regarding the reporting of cocci infections.

      f.     October 1, 2013, memorandum from Dr. Newton Kendig to all BOP Wardens including attachments.

      g.     Mr. Sandoval's BOP medical records.

      h.     Mr. Sandoval's medical records from Dr. Thomas Rotkis (Pulmonologist).

      i.     Mr. Sandoval's medical records from Dr. Lynn Fitzgibbons (Infectious Disease).

      j.     Mr. Sandoval's medical records from Dr. Martin Berry (Rheumatologist).

      k.     Testimony from Mr. Oscar Sandoval.

      l.     Testimony from Newton Emerson Kendig, M.D. regarding his October 1, 2013 memorandum and actions he expected to be implemented in response to his memo.

///

///

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

m.    Testimony from Warden McClintock regarding (1) measures allegedly in place at Safford to protect inmates from unnecessary exposure to cocci spores and (2) lack of evidence to establish compliance with Dr. Kendig's October 1, 2013 memo.

n.    Testimony from Dr. Royce Johnson:  Mr. Sandoval's retained expert witness who will testify regarding negligence, causation, effective preventative measures against cocci and damages.

o.    Testimony from Peter Jaramillo, Certified Industrial Hygienist:  Mr. Sandoval's retained expert witness who will testify regarding negligence, causation, effective preventative measure against cocci and benefits of education and awareness programs regarding the disease.

p.    Testimony from Ben Kollmeyer: Defendant's retained expert witness will testify regarding endemic areas containing cocci; characteristics of the disease and risk management strategies for preventing cocci exposure.

q.    Testimony from Jennie McNulty: Mr. Sandoval's retained economist who had been designated to testify regarding his economic damages.

## III.    STATEMENT OF DEFENDANT UNITED STATES' AFFIRMATIVE DEFENSES

### A.    Defendant plans to pursue the following Affirmative Defenses

*1.    Mr. Sandoval's complaint does not allege medical malpractice.*

Defendant contends Mr. Sandoval's Complaint only contains one vague reference to "misdiagnosis and mistreatment" of his condition.  It does not allege what care was negligently provided nor contain allegations regarding delayed testing or treatment. Defendant further contends Magistrate Judge Steve Kim has rejected Mr. Sandoval's argument that his Complaint contains a claim for medical negligence.

*2.    Mr. Sandoval's claims regarding dust mitigation efforts and provision of protective equipment to inmates at Safford are barred by the discretionary function exception to the FTCA.*

Defendant contends the BOP's decisions whether (1) to take certain measures to reduce the amount of dust in the air at Safford or (2) provide inmates with certain protective equipment to shield them from dust are barred by the discretionary function exception because these decisions are based on policy considerations.

*3.     Defendant had no duty to warn Mr. Sandoval regarding Valley Fever at Safford because the risk of infection did not present as an "unreasonably dangerous condition."*

Defendant contents that, as a matter of law, the minimal risk of contracting Valley Fever at Safford did not present a sufficiently dangerous condition that it would give rise to a duty to warn under Arizona common law.

*4.     Mr. Sandoval cannot establish causation regarding the BOP's failure to take dust mitigation measures that would have reduced the amount of dust generated from the soil on the property at Safford.*

Defendant contends that, to the extent Mr. Sandoval's negligence claim is based on the BOP's failure to take dust mitigation measures that would have reduced the amount of dust generated from the soil on the property at Safford, they are entitled to summary adjudication.  Defendant contends there is no evidence cocci spores were in the dirt at Safford during his incarceration.  As such, Mr. Sandoval cannot establish a causal relationship between the BOP's alleged failure to implement mitigation measures that may have reduced the amount of dust generated from the soil at Safford and his illness.

*Mr. Sandoval does not dispute this issue. He concedes it is appropriate for the Court to grant summary adjudication on this limited and narrowly defined issue.*

**B.     Defendant's elements to establish their affirmative defenses.**

*1.     Mr. Sandoval's complaint does not allege medical malpractice because it only contains one vague reference to "misdiagnosis and mistreatment" of his condition.*
///

**2:17-cv-03092-DMG-SK**
**- 13 -**
**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

a. Mr. Sandoval's complaint does not allege what care was negligently provided nor contain allegations regarding delayed testing or treatment.

b. Magistrate Judge Steve Kim has rejected Mr. Sandoval's argument that his complaint contains a claim for medical negligence.

(1) Plaintiff evidence and argument in opposition to Defendant's affirmative defense No. 1.

(a) A complaint filed in federal court is sufficient if it gives the defendant "fair notice of what the claim is and the grounds on which it rests." *Bell Atlantic Corp. v. Twombly*, (2007) 550 US 544, 555. Defendant was put on notice that Mr. Sandoval's claim included allegations regarding "misdiagnosis and mistreatment."

(b) Mr. Sandoval was in pro per when he filed his Complaint. "[H]owever inartfully pleaded" complaints by a pro se litigant are held to a less stringent standard than a pleading drafted by an attorney. *Harris v. Mills*, 572 F3d 66, 72 (2nd Cir. 2009.)

(c) Defendant's conduct during discovery confirms they were on notice that Mr. Sandoval's complaint included allegations of medical negligence. In fact, on December 27, 2018, Defendant propounded a set of specially drafted interrogatories to Mr. Sandoval which state:

> Identify all Medical Treatment You have received during Your Current Incarceration that You content failed to comply with the applicable standard of care, and, for each Medical Treatment You identify, state (a) the date on which You received the Medical Treatment; (b) what injury, illness, condition, or disability the Medical Treatment was intended to address; (c) the Health Care Provider who administered the Medical Treatment; (d) why You contend the Medical Treatment failed to comply with the applicable standard of care; and (e) how You contend You have been harmed by the Medical Treatment.

(d) Defendant's expert witness designation confirms they were on notice that Mr. Sandoval's complaint included allegations regarding medical negligence. Defendant designated Dr. Antonino Catanzaro to testify regarding the medical care

**2:17-cv-03092-DMG-SK**

**- 14 -**

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

provided to Mr. Sandoval during his incarceration.  He testified Mr. Biché, counsel for Defendant, specifically asked him to focus on the treatment and care provided to Mr. Sandoval.  In his expert witness report, and during deposition, Dr. Catanzaro opined the treatment and care Mr. Sandoval has received through the BOP complies with the standard of care.

(e)   The issue regarding whether Mr. Sandoval's complaint included a claim for medical negligence was never fully briefed or argued before Judge Kim.

*2.*   *Mr. Sandoval's claims regarding dust mitigation efforts and provision of protective equipment to inmates at Safford are barred by the discretionary function exception to the FTCA.*

a.   There are no mandatory statutes, regulations, or policies that govern the BOP's decisions regarding dust mitigation at Safford. *United States v. Gaubert*, 499 U.S. 315, 322 (1991); *Berkovitz v. United States*, 486 U.S. 531 (1988).

b.   The BOP's decisions regarding dust mitigation at FCI Stafford are based on considerations of public policy.

(1)   Mr. Sandoval's arguments in opposition to Defendant's affirmative defense No. 2.

(a)   This specific issue was previously raised by the Defendant is in *Panah v. United States*, 2011 WL 1312466 (C.D. Aug. 25, 2011), and rejected by District Court Judge Gary Allen Feess. There is no legitimate reason for this Court to deviate from Judge Feess well-reasoned decision.  Relying on the 9th Circuit decision in *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005), Judge Feess ruled that "Plaintiffs allegations pertaining to Defendant's failure to provide Plaintiff with a safe and habitable place of incarceration and to take preventative measures against the cocci infection are not susceptible to social, economic or political policy." *Panah*, supra, at *5.

///

///

2:17-cv-03092-DMG-SK

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

*3. Defendant contends that, as a matter of law, the minimal risk of contracting Valley Fever at Safford did not present a sufficiently dangerous condition that it would give rise to a duty to warn under Arizona common law.*

     a.    No inmates were diagnosed with cocci in 2014 and Mr. Sandoval was the only inmate diagnosed with the disease in 2015.

     b.    The cocci infection rate in Graham County, where Safford is located is significantly lower than the rate for the State of Arizona.

     (1)   Mr. Sandoval's arguments and evidence in opposition to Defendant's affirmative defense No. 3.

      (a)   Arizona law does not define what constitutes an unreasonably dangerous condition.

      (b)   The number of inmates diagnosed with cocci is not an accurate indication of the number who are infected with the fungus.  The Defendant knows that more than 60 percent of persons infected by cocci experience no illness or symptoms at all. (Evidence: Declaration of Dr. Antonino Catanzaro filed in support of Defendant's Motion for Summary Judgment.  Dr. Kendig's October 1, 2013, memo and attachments.)

      (c)   Defendant knows that in some inmates who become infected with cocci, the disease will disseminate to other parts of their bodies, potentially causing serious and fatal health problem. (Evidence: Dr. Kendig's October 1, 2013 memo and attachments.)

      (d)   Allowing inmates to be exposed to high winds puts them at greater risk for developing a cocci infection. (Evidence:  Deposition testimony of Dr. Kendig. Declaration of Ben Kollmeyer filed in Support of Defendant's Motion for Summary Judgment and attached articles.)

///

///

///

(e)  Failing to provide inmates with protective respiratory masks that were available for their use at Safford increases their risk of developing a cocci infection. (Evidence: Testimony of Mr. Sandoval's expert witnesses Dr. Royce Johnson and Mr. Peter Jaramillo and testimony of Ms. McClintock.)

## IV.  BIFURCATIONS OF ISSUES.

None.

## V.  JURY TRIAL

A jury trial is not available under the FTCA.

## VI.  ABANDONMENT OF ISSUES

Mr. Sandoval abandons his allegation that the BOP was negligent for failure to implement dust mitigation measures that would have reduced the amount of dust generated from the soil on the property at Safford.  He cannot establish a causal relationship between the BOP's failure to implement dust mitigation measures that may have reduced the amount of dust generated from the soil at Safford and his illness.

Respectfully submitted,

Dated: November 12, 2019          BERTLING LAW GROUP, INC.


*/s/ Peter G. Bertling*
Peter G. Bertling
Attorneys for Plaintiff
OSCAR SANDOVAL

**PLAINTIFF'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**