NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
TIMOTHY D. BICHE (Cal. Bar No. 293363)
Assistant United States Attorney
DAMON A. THAYER (Cal. Bar No. 258821)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-7354
                  (213) 894-6585
    Facsimile: (213) 894-7819
    E-mail: timothy.biche@usdoj.gov
              damon.thayer@usdoj.gov

Attorneys for Defendant
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| OSCAR SANDOVAL,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | No. CV 17-03092 DMG (SKx)<br><br>**UNITED STATES OF AMERICA'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>[Local Rule 16-4]<br><br>Pretrial Conference: Dec. 3, 2019<br>Trial: Jan. 14, 2020<br><br>Honorable Dolly M. Gee<br>United States District Judge |

## I. Introduction

Plaintiff Oscar Sandoval, an inmate in the custody of the BOP, alleges that he contracted Valley Fever while he was incarcerated at FCI Safford in Safford, Arizona. Plaintiff asserts three claims against the BOP, arguing that the BOP negligently failed to take certain measures at FCI Safford that Plaintiff contends would have reduced his chance of contracting Valley Fever. Specifically, Plaintiff alleges that the BOP should have (1) provided warnings to inmates regarding Valley Fever; (2) taken certain measures to reduce the amount of dust in the air at FCI Safford; and (3) provided inmates with certain protective equipment to shield them from dust. Compl. ¶¶ 19, 27 [Doc. # 1].

As the United States will show at trial, Plaintiff cannot establish any of his claims, and he is not entitled to any damages.

## II. Summary of Claims and Defenses (Local Rule 16-4.1)

### A. Summary of Plaintiff's Claims

Plaintiff asserts three causes of action against the United States:

1. Failure to Provide Inmate with Safe and Habitable Prison;
2. Premises Liability: Failure to Operate and Maintain Prison Facility in a Safe and Habitable Condition; and
3. Breach of Duty of Care Under 18 U.S.C. § 4042(a).

### B. Elements Required to Establish Plaintiff's Claims

<u>Elements Required to Establish Plaintiff's Claim for Failure to Provide Inmate with Safe and Habitable Prison</u>

By his First Cause of Action, Plaintiff alleges that the United States, acting through its agents, officers, and employees, owed Plaintiff a duty to exercise reasonable care to provide him with "a safe an habitable place of incarceration, where he could live and work without contracting a potentially fatal disease, despite his best efforts to pursue a healthy lifestyle and avoid activities that might risk his health." Compl. ¶ 40. Plaintiff alleges that the United States "did negligently and recklessly fail to comply with the

aforementioned duty, by incarcerating the Plaintiff at FCI Safford . . . and failing to implement or arrange for the implementation of known preventative measures that could have protected Plaintiff from infection." Id. ¶ 41. Plaintiff's first claim sounds in tort. In order to establish a claim for premises liability under Arizona law,[1] Plaintiff must prove: "(1) an unreasonably dangerous condition existed at the time of the accident; (2) the owner of the premise knew or should have known that the condition existed; (3) the condition was not discoverable by the plaintiff; and (4) the owner failed to exercise reasonable care in either providing a remedy or warning of the condition." D'Ambrosio v. City of Phoenix, 2014 WL 5310596, at *2 (Ariz. Ct. App. Oct. 16, 2014) (citing Moore v. Sw. Sash & Door Co., 228 P.2d 993, 995 (1951)).

<u>Elements Required to Establish Plaintiff's Claim for Failure to Operate and Maintain Prison Facility in a Safe and Habitable Condition</u>

By his Second Cause of Action, Plaintiff alleges that the United States, acting through its agents, officers, and employees, owed Plaintiff a duty to exercise reasonable care to "operate and maintain the [sic] FCI Safford in such a manner as to ensure that it was reasonably safe and habitable for human beings, and that it harbored no latent defects that constituted a dangerous condition and an unreasonable risk of harm to the health and safety of federal inmates assigned to FCI Safford, including Plaintiff." Compl. ¶ 44. Plaintiff alleges that the United States "did negligently or wrongfully fail to take steps to either make the aforementioned dangerous condition at FCI Safford safe or to adequately warn Plaintiff of the dangerous condition . . . which caused Plaintiff to contract the incurable and potentially fatal disease valley fever." Id. ¶ 45. Plaintiff's second claim sounds in tort. In order to establish a claim for premises liability under Arizona law, Plaintiff must prove: "(1) an unreasonably dangerous condition existed at

---

[1] Claims under the Federal Tort Claims Act are governed by the law of the state "where the act or omission occurred." 28 U.S.C. § 1346. Because all of the actions alleged in Plaintiff's Complaint took place in Arizona, Arizona law governs those claims.

2

the time of the accident; (2) the owner of the premise knew or should have known that the condition existed; (3) the condition was not discoverable by the plaintiff; and (4) the owner failed to exercise reasonable care in either providing a remedy or warning of the condition." D'Ambrosio, 2014 WL 5310596 at *2 (citing Moore, 228 P.2d at 995).

Elements Required to Establish Plaintiff's Claim for Breach

of Duty of Care Under 18 U.S.C. § 4042(a)

By his Third Cause of Action, Plaintiff alleges that the United States "failed to provide suitable quarters and provide for the protection, safekeeping, care and subsistence of Plaintiff." Compl. ¶ 47. Plaintiff alleged that this "caused [him] to contract the incurable and potentially fatal infectious disease valley fever." Id. ¶ 48. Plaintiff's third claim sounds in tort. In order to establish a claim for premises liability under Arizona law, Plaintiff must prove: "(1) an unreasonably dangerous condition existed at the time of the accident; (2) the owner of the premise knew or should have known that the condition existed; (3) the condition was not discoverable by the plaintiff; and (4) the owner failed to exercise reasonable care in either providing a remedy or warning of the condition." D'Ambrosio, 2014 WL 5310596 at *2 (citing Moore, 228 P.2d at 995).

**C.   The United States' Evidence in Opposition to Plaintiff's Claims**

Each of Plaintiff's three claims are based on three alleged negligent failures on the part of the United States: (1) the alleged failure to provide warnings to inmates regarding Valley Fever; (2) the alleged failure to take certain measures to reduce the amount of dust in the air at FCI Safford; and (3) the alleged failure to provide inmates with certain protective equipment to shield them from dust. Accordingly, the United States contends that the key evidence in opposition to these claims will be similar for all three claims.

        1.   Evidence Demonstrating no Duty to Warn

With regard to the alleged failure to warn inmates at FCI Safford of the risk of contracting Valley Fever, testimony from the United States' and Plaintiff's experts will demonstrate that the risk of contracting Valley Fever at FCI Safford did not present an

"unreasonably dangerous" condition and, therefore, did not give rise to a duty to warn under Arizona law. The United States' pulmonologist expert, Dr. Antonino Catanzaro, and Plaintiff's infectious disease expert are both expected to testify that Valley Fever is a fungal infection caused by the inhalation of Coccidioides spores, that more than 60 percent of persons infected by the fungus experience no illness or symptoms at all, and that, of the approximately 40 percent of infected persons who do exhibit symptoms, the vast majority experience a brief illness that last a few days and can resolve with or without treatment. Additionally, these experts are expected to testify that, while the infection can "disseminate" out of their lung and spread to other parts of their bodies, potentially causing serious health problems, that occurs in just 1 percent of people who become infected.

Additionally, the 2014 and 2015 Infection Prevention and Control Surveillance Reports (Inmates) from FCI Safford will demonstrate that FCI Safford has not experienced a significant number of cases of Valley Fever. The 2014 Report will show that no inmates were diagnosed with Valley Fever that year, while the 2015 Report will show that just one inmate, Plaintiff, was diagnosed that year. This will be supported by testimony from the United States' industrial hygienist expert, Ben Kollmeyer, which will show that the Valley Fever infection rate in Graham County, where FCI Safford is located, is much lower than the Valley Fever infection rate for the state of Arizona overall. Accordingly, the risk of contracting Valley Fever while incarcerated at FCI Safford was not an "unreasonably dangerous" condition that would have triggered a duty to warn under Arizona law.

### 2. Evidence of no Breach of Duty

With regard to the United States' alleged failure to take certain measures to reduce the amount of dust in the air at FCI Safford or to provide inmates with certain protective equipment to shield them from dust, the United States will present the deposition testimony from Susan McClintock, the Warden at FCI Safford during part of the time Plaintiff was incarcerated there, which demonstrates that there were certain dust

mitigation measures in place at FCI Safford during the time Plaintiff was incarcerated there. Specifically, during her deposition, Ms. McClintock testified that portions of the soil at FCI Safford were covered in gravel, that the buildings at FCI Safford were equipped with air conditioning systems with filters, that the doors to housing units at FCI Safford were equipped with door sweeps, and the windows on the housing units were permanently sealed. Each of these measures would tend to reduce the amount of dust inmates were exposed to, and this evidence demonstrates that the United States did not breach any duty of care.

### 3. Plaintiff is Unable to Establish Causation

To the extent Plaintiff's claims are based on the United States' alleged failure to take certain measures to reduce the amount of dust in the air at FCI Safford, he cannot satisfy his burden to establish a causal connection between the BOP's alleged failure to take these measures and his illness. No witness can testify that there were were Coccidioides spores in the dirt at FCI Safford when Plaintiff was incarcerated there. The United States' industrial hygienist expert will testify that, without establishing that the spore that caused Plaintiff's infection originated on the grounds of FCI Safford, Plaintiff cannot establish a causal relationship between the BOP's alleged failure to implement measures that may have reduced the amount of dust generated from the soil at FCI Safford and his illness. If the Coccidioides spores that caused Plaintiff's infection did not originate in the soil at FCI Safford, then reducing the amount of dust generated from the soil at FCI Safford would have had no impact on Plaintiff's chance of becoming infected. As the spores that cause Valley Fever can be carried by the wind for hundreds of miles, it is possible that the spores that caused Plaintiff's infection blew into the air from off the FCI Safford property. If that were the case—and Plaintiff cannot prove that it is not—then the BOP's alleged failure to reduce the amount of dust generated from the soil on the grounds at FCI Safford would have no impact on Plaintiff's injury.

4. <u>Evidence Showing Plaintiff's Minimal Damages</u>

Finally, even if Plaintiff is able to overcome the above evidence, his damages in this case are much lower than he claims. As an initial matter, because Plaintiff has been incarcerated since before he developed his disease, and because he is still incarcerated, he has not sustained any economic damages. While Plaintiff is scheduled for release from BOP custody in October 2022, he has an outstanding California state detainer that will require him to serve an additional 16 months in prison. Accordingly, Plaintiff will not start incurring future damages, if any, until sometime in 2024.

*a. Future Lost Wages*

Plaintiff first seeks damages for lost wages he contends he will experience following his release. As an initial matter, both the United States' pulmonologist expert and Plaintiff's infectious disease expert are expected to testify that there is no evidence that Plaintiff will be unable to work due to his Valley Fever. Plaintiff's economist expert, Ms. Jennie McNulty, testified at her deposition that, if Plaintiff can work, he will not experience any lost wages. Even if Plaintiff is unable to work, however, his lost wages will be minimal.

The United States' vocational rehabilitation expert, Dr. Roger Thrush, is expected to testify that Plaintiff would require training following his release to obtain work in either of the fields he indicated he would consider working in. Additionally, Dr. Thrush will testify that the estimated salary for the positions Plaintiff can be expected to obtain is much lower than the estimated figures used by Plaintiff's economist expert. Moreover, the United States' economist expert, Dr. Gerald Udinsky, will opine that any estimate of Plaintiff's lost wages must take into account the chance of recidivism, given that Plaintiff will have been incarcerated for nearly twenty years at the estimated time of his release.

*b. Future Medical Damages*

Plaintiff has not presented any evidence of the likely cost of the future medical care necessary to treat his Valley Fever. None of Plaintiff's experts have prepared a life-

care plan indicating what treatment Plaintiff is likely to need following his release from custody. While Plaintiff's treating physician has made certain recommendations about the course of Plaintiff's care, that non-retained expert has not prepared a comprehensive plan indicating the treatment Plaintiff is likely to need in the future. Instead of providing an expert opinion regarding the cost of specific care, Plaintiff's economist expert calculated "future medical damages" based on the cost of monthly insurance premiums and estimated out-of-pocket expenses for certain insurance plans. At deposition, however, Plaintiff's economist expert admitted that she assumed, but did not know, whether the insurance plans would cover the treatment Plaintiff is likely to require for his Valley Fever, admitted that the estimated annual out-of-pocket expenses used in her calculation was unrelated to Plaintiff's likely treatment, and admitted that the insurance plans would likely cover treatment Plaintiff may need for conditions unrelated to his Valley Fever.[2]

### D. Summary of the United States' Affirmative Defense.

The United States will pursue one affirmative defense at trial: the "discretionary function exception" to the Federal Tort Claims Act ("FTCA") applies here and leaves this Court without subject-matter jurisdiction. See Answer, Affirmative Defenses ¶ 4 [Doc. # 24].

### E. Elements Required to Establish Affirmative Defense.

Under the discretionary function exception, the FTCA's waiver of sovereign immunity does not apply to "[a]ny claim based on the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved [was] abused." 28 U.S.C. § 2680(a). The discretionary function exception "prevent[s] judicial

---

[2] The United States has filed a Motion in Limine asking the Court to exclude Plaintiff's economist expert's testimony regarding the estimated costs of various health insurance plans as irrelevant to the issue of Plaintiff's future medical damages. [Doc. # 93.]

7

'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984). The exception marks the boundary between Congress' "willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." Id. at 808. If the exception applies, the United States has not waived its sovereign immunity, and the federal courts lack jurisdiction over the tort claims. Id. at 814.

The Supreme Court has established a two-part test for determining whether the discretionary function exception applies. Berkovitz v. United States, 486 U.S. 531, 536-37 (1988); Terbush v. United States, 516 F.3d 1125, 1229 (9th Cir. 2008). First, a court must determine whether the challenged action was a discretionary one, "that is, it must involve an element of judgment or choice." Berkovitz, 486 U.S. at 536. If the conduct involves an element of judgment, the court then determines "whether that judgment is of the kind that the discretionary function exception was designed to shield." Id. If both prongs of the test are satisfied, then the discretionary function exception applies, and the court lacks jurisdiction to consider the claim.

**F.     Description of Key Evidence Supporting Affirmative Defense.**

United States' key evidence supporting its affirmative defense consists of the testimony establishing that there are no statutes, regulations, or policies that prescribed a specific course of action the BOP was required to follow with regard to the mitigation of dust or the provision of protective equipment to inmates at FCI Safford and that decisions regarding how to keep inmates safe from environmental hazards involve judgment and choice, taking into account factors such as the rights of inmates to move around and participate in outdoor activities, the allocation of limited resources, risk severity, the likely effectiveness of preventative measures targeted at any given risk, and inmate safety and security.

### G. Anticipated Evidentiary Issues

The United States has filed two motions in limine. The first motion in limine seeks to bar Plaintiff from introducing evidence or making arguments regarding the applicable standard of medical care or any alleged medical negligence on the part of the BOP. [Doc. # 92.] As is clear from the Complaint, and as the Magistrate Judge in this case has recognized, Plaintiff has not asserted a claim for medical negligence. Accordingly, evidence regarding what standard of care applied to the medical treatment Plaintiff has received while in prison and whether the care he has received fell below that standard is not relevant to the issues presented by this case, and should be excluded. The second motion in limine seeks to preclude Plaintiff from relying on the irrelevant general cost of insurance plans to establish the amount of future damages. [Doc. # 93.] As noted above and in the motion in limine, the cost of various insurance plans does not accurately reflect the amount of future damages, if any, Plaintiff will sustain as a result of the alleged negligent conduct. As a result, that evidence is irrelevant, and should be excluded.

### H. Anticipated Legal Issues

The parties are generally in agreement about the substantive law applicable to this case. Notably, currently pending before the Court is the United States' Motion for Summary Judgment, which is scheduled to be heard November 22, 2019. The Court's ruling on that Motion may eliminate the need for trial or reduce the number of triable legal issues.

## III. **Bifurcation of Issues (Local Rule 16-4.3)**

The United States does not seek bifurcation in this case.

## IV. **Jury Trial (Local Rule 16-4.4)**

This case shall be tried to the Court. See 28 U.S.C. § 2402.

///

///

///

## V. Attorneys' Fees (Local Rule 16-4.5)

Plaintiff is not entitled to an award of attorneys' fees against the United States in this matter. Attorneys' fees are limited to a maximum of 25 percent of any recovery. See 28 U.S.C. § 2678.

## VI. Abandonment of Issues (Local Rule 16-4.6)

To streamline the issues at trial, the United States has elected to abandon its first, third, and fifth through fourteenth affirmative defenses.

Dated: November 12, 2019

Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

 /s/ Timothy D. Biché
TIMOTHY D. BICHÉ
Assistant United States Attorney

 /s/ Damon A. Thayer
DAMON A. THAYER
Assistant United States Attorney

Attorneys for Defendant
United States of America