UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| OSCAR SANDOVAL,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA,<br><br>  Defendant. | No. CV 17-03092 DMG (SKx)<br><br>**[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Trial:                    Jan. 14, 2020<br><br>Honorable Dolly M. Gee<br>United States District Judge |

Pursuant to the Court's June 7, 2019 Order Continuing Trial and Pre-Trial Dates (Doc. # 72), the December 3, 2019 Scheduling and Case Management Order Re Court Trial (Doc. # 109-1), Federal Rule of Civil Procedure 52, and Central District Local Rule 52-4, the United States of America submits the following Findings of Fact and Conclusions of Law:

## I. Findings of Fact

1. The United States is sued in this matter based on alleged negligent omissions that Plaintiff contends caused him to contract Valley Fever while incarcerated at the Federal Correctional Institution at Safford, Arizona (FCI Safford).

2. On February 1, 2006, Plaintiff was convicted on one count of Importation of Methamphetamine, in violation of 21 U.S.C. §§ 952, 960, and one count of Possession of Methamphetamine with Intent to Distribute, in violation of 28 U.S.C. § 841(a)(1). As a result of these convictions, Plaintiff was committed to the custody of the United States Bureau of Prisons for a term of 240 months.

3. From July 23, 2014, until October 29, 2015, Plaintiff was incarcerated at FCI Safford.

4. FCI Safford is a low security federal correctional institution with a population of approximately 950 male inmates.

5. During Plaintiff's incarceration at FCI Safford, it was designated a "Care Level 1" facility, which means that mostly healthy inmates with limited medical needs are incarcerated there.

6. Safford is located in Graham County, Arizona.

7. Since November 30, 2015, Plaintiff has been incarcerated at the Federal Correctional Institution at Lompoc, California (FCI Lompoc).

8. Coccidioidomycosis, also known as "Valley Fever," is an illness caused by the naturally occurring soil fungus *Coccidioides immitis* and *Coccidioides posadasii*, hereinafter referred to as *Cocci*.

9. *Cocci* spores typically enter the body through the respiratory system.

10. Most people who are exposed to *Cocci* spores do not become notably ill.

11. More than 60 percent of persons infected by *Cocci* experience no illness or symptoms at all.

12. Of the approximately 40 percent of infected persons who do exhibit symptoms, the vast majority experience a brief illness that may include manifestations such as fever, rash, and headache.

13. In a small percentage of people who become infected, *Cocci* can "disseminate" out of their lung and spread to other parts of their bodies, such as their skin, and cause serious health problems.

14. On October 1, 2013, Newton E. Kendig, M.D. sent a memo to all Bureau of Prison Wardens entitled: "Staff and inmate awareness of the infectious disease known as 'Valley Fever.'" Dr. Kendig was the Assistant Director of Health Services Division for the Bureau of Prisons.

15. Dr. Kendig's October 1, 2013 Memo included a "Lesson Plan" which sets forth the information regarding Valley Fever that he wanted all inmates at FCI Safford to know.

16. Susan McClintock was the Warden at Safford between 2012 and December 2014.

17. During the time Plaintiff was incarcerated at FCI Safford, there were a number of measures in place to mitigate inmates' exposure to dust.

18. Soil in open areas in the center of prison compound was covered in rocks to reduce the amount of dust generated.

19. The buildings at FCI Safford were equipped with air conditioning systems with filters to reduce the amount of dust that could enter into a building.

20. The windows on the housing at FCI Safford units were permanently secured to maintain comfort and to prevent dust from entering units.

21. Safford had protective masks available that could be used as respiratory protection for inmates who were required to work in a job that exposed them to significant quantities of dust.

22. In 2014, no inmates at FCI Safford were diagnosed with Valley Fever.

23. Plaintiff was diagnosed with Valley Fever in March, 2015.

24. Plaintiff was the only inmate at FCI Safford diagnosed with Valley Fever in 2015.

25. Prior to his diagnosis, Plaintiff was not warned of the risk of contracting Valley Fever while at FCI Safford.

26. Plaintiff never requested a protective mask while he worked as an orderly at FCI Safford, and he was not provided one.

27. Based on the testimony of the United States' expert witness Ben Kollmeyer, MPH, CIH, it cannot be said that providing Mr. Sandoval with a dust mask while he worked as an orderly more likely than not would have prevented Mr. Sandoval from contracting Valley Fever.

28. Mr. Sandoval has not presented any evidence indicating that, had he been provided with a dust mask while he worked as an orderly, it more likely than not would have prevented him from contracting Valley Fever.

29. Based on the testimony of Mr. Kollmeyer, it cannot be said that advising Mr. Sandoval of the risk of Valley Fever more likely than not would have prevented Mr. Sandoval from contracting Valley Fever.

30. Mr. Sandoval has not presented any evidence indicating that, had he been advised of the risk of contracting Valley Fever, it more likely than not would have prevented him from contracting Valley Fever.

31. Based on the testimony of Mr. Kollmeyer, it cannot be said both providing Mr. Sandoval with a dust mask while he worked as an orderly and advising Mr. Sandoval of the risk of Valley Fever, taken together, more likely than not would have prevented Mr. Sandoval from contracting Valley Fever.

32. Mr. Sandoval has not presented any evidence indicating that if the BOP both provided him with a dust mask while he worked as an orderly and advised him of the risk of Valley Fever, those actions, taken together, would have more likely than not prevented Mr. Sandoval from contracting Valley Fever.

33. Any Finding of Fact which is properly deemed a Conclusion of Law shall be considered a Conclusion of Law.

**II.   Conclusions of Law**

1. In an action brought pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 et seq., the law of the place where the allegedly negligent act occurred governs the substantive law applied. See 28 U.S.C. § 1346(b).

2. To have a cognizable claim under the FTCA, the claim must arise from the negligent or wrongful act of a government employee acting within the scope of his or her employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b); Dalehite v. United States, 346 U.S. 15, 18 (1953).

3. In this case, Arizona law applies because all of the acts or omissions alleged in Plaintiff's Complaint took place in Arizona.

4. Under the FTCA, the United States is liable in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages. 28 U.S.C. § 2674.

5. To establish a claim for negligence under Arizona law, a plaintiff must prove "(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." Gipson v. Kasey, 150 P.3d 228, 230 (Ariz. 2007).

6. To establish causation under Arizona law, the plaintiff must "introduce evidence which affords a reasonable basis for the conclusion that it is more likely than

not that the conduct of the defendant was a substantial factor in bringing about the result." <u>Purcell v. Zimbelman</u>, 500 P.2d 335, 342 (Ariz. App. 1972).

7. Mr. Sandoval has not met his burden to show that the United States' failure to warn him about the risk of Valley Fever caused him to contract Valley Fever.

8. Mr. Sandoval has also not met his burden to show that the United States' failure to offer or provide him with a protective face mask while working as an orderly caused him to contract Valley Fever.

9. Mr. Sandoval has further not met his burden to show that the United States' failure to warn him about the risk of Valley Fever, even if considered together with the United States' failure to offer or provide him with a protective face mask while working as an orderly, caused him to contract Valley Fever.

10. Because Mr. Sandoval has not proven one of the elements required to establish a claim for negligence under Arizona law, Mr. Sandoval's claims against the United States must fail.

11. Any Conclusion of Law which is properly deemed a Finding of Fact shall be considered a Finding of Fact.

Dated:

                                          Honorable Dolly M. Gee
                                          United States District Judge